# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**HIP HOP BEVERAGE CORPORATION,**
        Plaintiff,

    v.                                        Case No. 13-CV-00412

**KRIER FOODS, INC.** and
**WB WAREHOUSING AND LOGISTICS, INC.,**
        Defendants,

    v.

**REGENT INSURANCE COMPANY,**
        Intervenor Defendant.

---

## DECISION AND ORDER

Plaintiff Hip Hop Beverage Corporation ("Hip Hop") sues defendants Krier Foods, Inc. ("Krier") and WB Warehousing and Logistics, Inc. ("WB") for breach of contract, negligence and equitable indemnity. I granted Regent Insurance Company's ("Regent") motion to intervene and file a claim against Krier. Before me now is Regent's motion for summary judgment.

The relevant facts are as follows: Hip Hop contracted with Krier to fill, package and prepare for shipment cans of a carbonated beverage sold by Hip Hop. In its first amended complaint, Hip Hop alleges that Krier improperly filled and packaged the cans causing some of them to leak. Hip Hop further alleges that Krier stored some of the cans at one of WB's warehouses until their "use by" dates had expired. As a result, Hip Hop claims it lost profits, had to issue credits to many of its customers, and was forced to accept delivery of

"significant quantities" of product that was unusable because it was leaking and/or expired. (First Amended Complaint ¶ 22, ECF No. 14.)

In an email dated July 11, 2013, Hip Hop provided defendants with more details about the damages it is seeking. Among other things, the email indicates that Hip Hop is seeking to recover the costs it incurred when disposing of the leaking and expired cans:

> **Damaged Shipments**
>
> Shipments to [Hip Hop] of leaking beverage cans total not less than $208,714.66. Not included in this sum are the charges incurred by [Hip Hop] for the delivery of this product that it could not use, and, in fact, was required to dispose of at significant expense. As an example of this, just during September, 2012, at least 9 separate shipments containing significant quantities of leaking cans were received at [Hip Hop's] Carson, California warehouse. Unpacking the pallets with leaking cans, segregating the leaking cans from the good ones, repacking the good ones, disposing of the bad ones, and then cleaning up the pools of product that leaked from the cans, required the labor of four workers, for three weeks at twelve hours per day, at a labor rate of $18/hr.—$12,960 for that period alone.
>
> More damaged goods were received from Krier Foods at [Hip Hop's] Carson warehouse during the week of June 24, two semi-trailers' worth, or about 34 pallets, about 2,720 cases . . . . [O]nce [Hip Hop] received the product from Krier Foods the week of June 24, much if not most of it either was out of code (i.e., beyond the date code or "use/best by" date) or too old for sale to the U.S. Military, which has stringent date code requirements (because product sold to the military needs longer lead times due to its storage and shipment requirements).

(Aff. of Jeffrey Evans, Ex. 3, ECF No. 58-3.)

Regent is a Wisconsin insurance company that issued a commercial general liability policy ("CGL policy") to Krier. Krier tendered the defense of Hip Hop's claims to Regent under the CGL policy, and Regent agreed to defend Krier subject to a reservation of rights.

2

Regent now seeks summary judgment declaring that it has no duty to defend or indemnify Krier because none of Hip Hop's claims are covered by the CGL policy.[1]

Summary judgment is appropriate when "there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, Regent is asking me to declare that it has no duty to indemnify Krier for any of Hip Hop's claims. In other words, it is asking me to make a final coverage determination. In Wisconsin,[2] an insurer has a duty to indemnify an insured for any proven loss that is covered under the terms of the policy. *Olson v. Farrar*, 338 Wis. 2d 215, 228 (2012). The interpretation of a policy presents a question of law that can be resolved by a court. *Id.* at 231. It is interpreted "'to mean what a reasonable person in the position of the insured would have understood the words to mean,'" and any ambiguities in the policy are construed in favor of coverage. *Id.* at 233 (quoting *Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 536 (1994)). A court may, however, need to resolve factual issues in order to determine the nature of a claim to see if it is covered by the policy. *Id.* at 231. When determining the nature of a claim, a court may look beyond the allegations in the complaint

---

[1] Regent also issued a commercial liability umbrella policy ("Umbrella policy") to Krier. Like the CGL policy, the Umbrella policy requires Regent to defend and indemnify Krier, but the duty to defend is only triggered if the CGL policy provides no coverage or its coverage limits have been exhausted. Otherwise, the pertinent policy provisions are the same in both policies.

[2] The parties agree that Wisconsin law governs the insurance policies at issue in this case.

and consider any extrinsic evidence that is relevant to the coverage determination. *Id.* at 230–31.[3]

The policy at issue here is a CGL policy, which is designed to protect the insured against liability for damages the insured's negligence causes to third parties. "'The risk intended to be insured [in a CGL policy] is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable.'" *Vogel v. Russo*, 236 Wis. 2d 504, 512 (2000) (quoting *Bulen v. West Bend Mut. Ins. Co.*, 125 Wis. 2d 259, 264–65 (Ct. App. 1985)), *overruled on other grounds by Insurance Co. of N. Am. V. Cease Elec., Inc.*, 276 Wis. 2d 361, 372 n.6 (2004). Krier argues that one of Hip Hop's claims is covered by the policy because Hip Hop is seeking reimbursement for the loss of the use of its warehouse. The policy defines "property damage" as "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." (Evans Aff., Ex. 4, § V(17), ECF No. 58-4.) Krier points out that Hip Hop's July 2013 email indicates that it lost the use of at least part of its Carson warehouse when it was forced to accept and store shipments of cans from Krier. In response, Regent argues that Hip Hop is not bringing a claim for the loss of the use of its

---

[3] Regent cites the "four-corners rule" in its brief, which limits a court to considering the allegations contained within the four corners of the complaint. This rule only applies when a court is determining whether an insurer has an initial duty to defend an insured. In that situation, a court need only consider the complaint because an insurer has a duty to defend whenever "'a complaint alleges facts that, if proven, would constitute a covered claim.'" *Olson*, 338 Wis. 2d at 229 (quoting *Estate of Sustache v. American Family Mut. Ins. Co.*, 311 Wis.2d 548, 563 (2008)). In a case like this one, where the insurer has elected to provide a defense pending a final determination on coverage, the court can consider evidence outside of the complaint. *Id.* at 230–31.

4

warehouse, only a claim for the cost of the labor required to sort and repackage the shipments of cans. Even if Hip Hop is bringing such a claim, Regent argues that it would not be covered by the policy because the warehouse was not rendered totally uninhabitable.

At this stage of the proceedings, it is not clear whether Hip Hop is bringing a claim for the loss of the use of its warehouse. In its July 2013 email, Hip Hop claims it was forced to accept and store several shipments of cans from Krier at its warehouse and says it incurred significant costs as a result. It does not list all of these costs. It only offers one example, the labor required to sort and repackage the cans during September 2012. Thus, it is possible that one of the costs Hip Hop incurred was the loss of the use of part or all of its warehouse. If Hip Hop is bringing a claim for such a loss, the claim might be covered by the policy. The warehouse does not have to be rendered totally uninhabitable for Hip Hop to have a claim for loss of use. *See Wis. Label Corp. v. Northbrook Property & Cas. Ins. Co.*, 221 Wis. 2d 800, 814 (Ct. App. 1998) (noting that a farmer had a claim for loss of use of a field where he planted it with mistagged seeds and did not discover the error until it was too late to replant); *see also U.S. Fire Ins. Co. v. Good Humour Corp.*, 173 Wis. 2d 804, 824 (Ct. App. 1993) ("The loss of use of storage space caused by [the claimant's] collection of the recalled product is one example of a loss of use of tangible property that is property damage caused by an occurrence."). As a result, I cannot issue a judgment declaring that none of Hip Hop's claims are covered by Krier's insurance policy with Regent.

**THEREFORE, IT IS ORDERED** that the motion for summary judgment by intervening defendant Regent Insurance Company (Docket #55) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 24th day of January, 2014.

                                            s/ Lynn Adelman
                                            _____
                                            LYNN ADELMAN
                                            District Judge